UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| LIONEL NIMA NGAPEY, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | )  No. 2:24-cv-00004-NT |
| | ) |
| CMC MORTGAGE, INC., et al., | ) |
| | ) |
| Defendants | ) |

### RECOMMENDED DECISION ON MOTIONS TO DISMISS AND TO AMEND COMPLAINT

Pro se plaintiff Lionel Nima Ngapey filed this suit in the state court on December 12, 2023, alleging violations of federal and state consumer protection laws by nine defendants. *See* State Court Docket Record (ECF No. 14-1); Complaint (ECF No. 14-2).[1] On January 5, 2024, defendant Trans Union, LLC, removed the case to this Court, *see* Notice of Removal (ECF No. 1), following which Trans Union and five other defendants—CMG Mortgage, Inc., U.S. Bank National Association d/b/a Elan Financial Services, Resurgent Capital Services L.P., LVNV, and Experian Information Solutions, Inc.— moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint for failure to state a claim against them, *see* CMG MTD (ECF No. 12); Trans Union MTD (ECF No. 22); Elan MTD (ECF No. 23); Resurgent/LVNV MTD (ECF No. 24); Experian MTD (ECF No. 34).

---

[1] Ngapey omitted one of the nine defendants, LVNV Funding LLC, from the caption of his complaint. *Compare* Complaint at 1 *with id.* at 5.

1

On March 4, 2024, Ngapey filed a belated response to the CMG, Trans Union, Elan, and Resurgent/LVNV motions in which he sought to amend his complaint. *See* MTD Response/MTA (ECF No. 28).[2] At the Court's direction, *see* ECF No. 33, he filed a proposed amended complaint on April 4, 2024, *see* ECF No. 36. On May 1, 2024, he filed certificates of service of process of the proposed amended complaint "by mail" upon the three remaining defendants, Cross River Bank, Equifax Inc., and Marlette Funding LLC d/b/a Best Egg. ECF No. 44.

For the reasons that follow, I recommend that the Court (1) dismiss Ngapey's claims against Cross River, Marlette, and Equifax for insufficient service of process and futility, (2) grant the motions of Trans Union, CMG, Elan, Experian, Resurgent, and LVNV to dismiss the complaint, and (3) deny Ngapey's motion to amend his complaint.[3]

## I. Service of Process

### A. Legal Standard

The Federal Rules of Civil Procedure allow a plaintiff either to request a waiver of service from a domestic corporate defendant, *see* Fed. R. Civ. P. 4(d)(1), or to serve that defendant in one of two ways: "in the manner prescribed by Rule 4(e)(1) for

---

[2] Ngapey's responses to these defendants' motions to dismiss were due on dates ranging from February 7, 2024, *see* ECF No. 12, to March 1, 2024, *see* ECF No. 24. Ngapey filed a combined response to all of those motions on March 4, 2024. *See* ECF No. 28. Experian subsequently filed its motion to dismiss on March 22, 2024, with a response due by April 12, 2024. *See* ECF No. 34. Ngapey has filed no response.

[3] While a motion to amend a complaint "is not normally dispositive" and, thus, within the authority of a Magistrate Judge to decide, this Court has treated such motions as dispositive when, as here, they effectively dispose of a party's claim or defense. *Sargent v. NorDx*, No. 2:20-cv-00467-JAW, 2022 WL 17738711, at *4 (D. Me. Dec. 16, 2022).

serving an individual" or "by delivering a copy of the summons and complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant[,]" Fed. R. Civ. P. 4(h).  Federal Rule of Civil Procedure 4(e)(1) also allows service in accordance with the law of the state "where the district court is located or where service is made[.]" Fed. R. Civ. P. 4(e)(1).  The Maine Rules of Civil Procedure, like the federal rules, provide for personal service upon a corporation.  *Compare* Me. R. Civ. P. 4(d)(9) *with* Fed. R. Civ. P. 4(h).[4]

## B. Discussion

On May 1, 2024, Ngapey filed "certificates of service" of his proposed amended complaint on Cross River, Equifax, and Marlette stating that he had served a copy of that complaint with seven exhibits "by mail" upon each of those defendants that day. ECF No. 44.  However, to serve those entities properly, he was required to deliver copies of the summons and complaint to each entity's officer, director, or authorized agent for receipt of service.  *See* Fed. R. Civ. P. 4(h); Fed. R. Civ. P. 4(e)(1); Me. R. Civ. P. 4(d)(9).  Because Ngapey neither sought a waiver of service from Cross River, Equifax, or Marlette nor demonstrates that he made proper service upon any of them, I recommend that the Court dismiss Ngapey's claims against them for insufficient

---

[4] Maine Rule of Civil Procedure 4(d)(9) provides for service upon "a corporation established under the laws of any other state" by (1) delivering a copy of the summons and complaint "to any officer, director or agent" or "leaving such copies at an office or place of business of the corporation within the state" or by "delivering" such copies "to any agent or attorney in fact authorized by appointment or statute to receive or accept service on behalf of the corporation, provided that any further notice required by the statute shall also be given." Me. R. Civ. P. 4(d)(9).

3

service of process and, in the alternative, because his claims against them are futile for the reasons discussed below.

## II. Motions to Dismiss Complaint

On any or all of the following three bases, I recommend that the Court dismiss the complaint: that (1) Ngapey did not timely respond (or, in one case, respond at all) to the Defendants' motions to dismiss, (2) in his untimely response, Ngapey made no reasoned argument why the complaint should survive a motion to dismiss, instead focusing on his embedded motion to amend, and, (3) in any event, Ngapey's allegations are too vague and conclusory to survive a motion to dismiss.

### A. Untimeliness

The First Circuit has made it clear that "it is within the district court's discretion to dismiss an action based on a party's unexcused failure to respond to a dispositive motion when such response is required by local rule, at least when the result does not clearly offend equity." *Pomerleau v. W. Springfield Pub. Schs.*, 362 F.3d 143, 145 (1st Cir. 2004). "Where a local rule expressly requires a response to a motion, the non-moving party is placed on notice that failure to respond could result in a procedural default." *Id.*

Local Rule 7(b) requires a party to file a written objection to a contested motion within twenty-one days, failing which the party is "deemed to have waived objection." "This applies to pre-trial motions, including motions filed pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)." *Harriman v. Bolduc*, No. 1:22-cv-00264-JDL, 2023 WL 2162809, at *2 (D. Me. Feb. 22, 2023).

4

Ngapey's combined response to all but one of the motions to dismiss was filed belatedly without the Court's permission on March 4, 2024, and he filed no response to the final motion to dismiss. His pro se status did not excuse these transgressions. *See Heather S. v. Berryhill*, No. 1:18-cv-00178-JAW, 2018 WL 4781169, at *1 (D. Me. Oct. 3, 2018) (rec. dec.) ("While pro se litigants are accorded a certain degree of latitude, Defendant's pro se status does not excuse him from complying with . . . the Federal Rules of Civil Procedure and the Court's Local Rules." (cleaned up)), *aff'd*, ECF No. 20 (D. Me. Mar. 13, 2019); *Harriman*, 2023 WL 2162809, at *1-2 (holding that a pro se plaintiff waived any opposition to a motion to dismiss by failing to file a timely response). Ngapey's unexcused failure to timely respond, or in one case to respond at all, to the motions to dismiss constitutes a waiver of any objection to those motions.

## B. Lack of Developed Argumentation

The First Circuit has repeatedly held that "issues adverted to in a perfunctory fashion, unaccompanied by some effort at developed argumentation, are deemed waived." *Watson v. Trans Union LLC*, 223 F. App'x 5, 6 (1st Cir. 2007) (cleaned up). Even though pro se litigants are afforded a wider latitude than counseled litigants, *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997), they are still subject to this requirement, *United States v. Nishnianidze*, 342 F.3d 6, 18 (1st Cir. 2003).

While Ngapey states that he opposes the motions to dismiss, *see, e.g.,* MTD Response/MTA ¶¶ 1, 20, 34, 45, 48, he offers no argument why his complaint as worded should survive those motions, focusing instead on his embedded motion to

5

amend his complaint, buttressed by additional factual allegations, *see id.* ¶¶ 11-19, 21-33, 35-44, 46-47, 49-54. Ngapey therefore has waived any objection to the motions to dismiss by failing to offer any developed argumentation that the complaint passed muster as worded.

### C. Failure to State a Claim

To assess the complaint's adequacy, courts apply a "two-pronged approach," *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011): First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements," and, second, the court will take the complaint's well-pleaded "(i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief," *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012).

An unrepresented plaintiff's complaint must be read liberally in this regard, *see Donovan v. Maine*, 276 F.3d 87, 94 (1st Cir. 2002), but must still contain "the crucial detail of who, what, when, where, and how" in order to provide fair notice of what the claims are and the grounds upon which they rest, *Byrne v. Maryland*, No. 1:20-cv-00036-GZS, 2020 WL 1317731, at *5 (D. Me. Mar. 20, 2020) (rec. dec.), *aff'd*, 2020 WL 2202441 (D. Me. May 6, 2020).

The complaint brims with legal labels and conclusions and is largely barren of the crucial detail of who, what, when, where, and how. Ngapey alleges, for example, that Elan "does not have the right to restrict plaintiff['s] credit card and delete his

6

online account," Complaint ¶ 9, "Plaintiff is a victim of an identity theft" by Cross River and "dispute[s] the validity of the loan signed under his name," *id*. ¶ 11, CMG "illegally denied plaintiff the right to home financing . . . because plaintiff was on public assistance . . . and was already an owner of a property in Cumberland County," *id*. ¶19, and Equifax, Experian, and Trans Union "failed to investigate plaintiff's claim against the unfair report of [Elan]" and "the invalid debt of [$]31,246.75" reported by Cross River, *id*. ¶ 23. Yet, his complaint is short on details of what precisely these entities did and when, where, or how.

The Complaint therefore fails to state a claim against any of the defendants, warranting its dismissal on that ground, as well.

### III.  Motion to Amend Complaint

#### A.  Legal Standard

"A motion to amend . . . will be treated differently depending on its timing and the context in which it is filed." *Steir v. Girls Scouts of the USA*, 383 F.3d 7, 11-12 (1st Cir. 2004). In some circumstances, a party may amend its pleading as a matter of course; otherwise, a party may amend its pleading only with the consent of the opposing party or leave of court. *See* Fed. R. Civ. P. 15(a)(1)-(2).

When, as here, such leave is sought before the deadline for amendment of pleadings, it should be "freely" given "when justice so requires." Fed. R. Civ. P. 15(a)(2). Nevertheless, courts are not obligated to "mindlessly grant every request for leave to amend" and may deny leave "[w]hen the proffered amendment comes too

late, would be an exercise in futility, or otherwise would serve no useful purpose." *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 58 (1st Cir. 2008).

In assessing futility, courts apply the same standard as when assessing motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thus, an amendment is futile when, even assuming the truth of all well-pleaded facts, it fails to state a claim upon which relief could be granted. *See Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996).

### B. Factual Allegations

The proposed amended complaint alleges the following.

Ngapey, a Black man living with disability, submitted a home-loan application to CMG in January 2023. Proposed Amended Complaint ¶ 7. He disclosed his disability status, public assistance income, and right to use equity from a property he owned in Portland, Maine. *Id.* ¶¶ 8-9. CMG notified Ngapey in February 2024[5] that it had denied the loan, *see id.* ¶ 10, but never provided him an explanation for the denial in writing, *id.* ¶ 13. Ngapey believes that his race, disability, income status, and national origin played a major role in CMG's adverse decision. *Id.* ¶ 15; *see also id.* ¶¶ 11-12.[6]

Elan was an undisclosed third party to a credit agreement that Ngapey had with cPort Credit Union in 2017 and accessed his financial data without his consent.

---

[5] Ngapey presumably meant February 2023. In any event, the precise date is immaterial to the outcome.
[6] Ngapey further alleges that CMG denied his loan because it has "a policy that does not accept [a] black owner applicant with [a] housing voucher living with a disability, regardless of any property equity they have available." Proposed Amended Complaint ¶ 11. However, he supplies no detail supporting the existence of such a policy.

8

*Id.* ¶ 21. Ngapey never signed any document or contract authorizing Elan to open a line of credit in his name in November 2016. *Id.* ¶ 22. Elan maintained that unauthorized account from 2016 to 2024. *Id.* ¶ 23.

In March 2022[7], Ngapey noticed multiple transactions from various points of sale in Canada and notified Elan, which refused to investigate and hung up on his phone calls multiple times. *Id.* ¶ 24. In April and May 2023 Ngapey succeeded in contacting Elan and spoke with representatives from its fraud department and customer service center. *Id.* ¶ 25. Elan refused to provide Ngapey with documentation showing that he was the owner of the account, failed to investigate, and reversed a provisional credit it had made to his account. *Id.* ¶ 26. Ngapey was charged for more than $7,000 in transactions made in Ontario, Canada, and New York in February and March 2023 that he had claimed were unauthorized because he had earlier misplaced his credit card. *Id.* ¶ 27. Ngapey never received the documentation that Elan claimed supported its finding that he alone had used the card to make the disputed charges, and he was charged an interest rate exceeding Maine's six percent cap. *Id.* ¶ 29. Elan also restricted Ngapey's access to his online account and canceled his $14,000 credit card limit without explanation. *Id.* ¶ 30.

Cross River acts as guarantor of loans made by Marlette. *Id.* ¶ 36. In June 2022 Cross River and Marlette, both identified as online lenders, made Ngapey a loan offer. *Id.* ¶ 38. Rather than charging the six percent interest rate advertised, Marlette charged Ngapey double-digit interest rates and large upfront origination

---

[7] Ngapey presumably meant March 2023. As before, the precise date is immaterial to the outcome.

fees, as a result of which Ngapey had to pay thousands of extra dollars to avoid defaulting on the loan. *Id* ¶¶ 39, 41. Ngapey has no "recollection of signing a valid consumer loan" of more than $31,000 with Cross River and Marlette. *Id.* ¶ 37. Other than renting its name to Marlette, Cross River has no real involvement in the loans made to Ngapey. *Id.* ¶ 42.

In early 2023 Ngapey sent letters to three consumer reporting agencies, Experian, Trans Union, and Equifax, requesting that they cease reporting four debts whose validity he disputed: (1) a car loan debt of $45,000 to AmeriCredit Financial Services d/b/a GM Financial Services, (2) a debt of $5,421 to AmeriCredit, (3) a debt more than $6,000 for child support, and (4) a debt to Elan of $7,961. *Id.* ¶¶ 72-77, 92-98, 110-15. Ngapey considered the child support debt invalid because he had full custody of his child, *see id.* ¶¶ 76, 98, 115, and he was contesting the validity of the other three debts in the Maine Superior Court (Cumberland County), *see id.* ¶¶ 72, 92, 110. Experian, Trans Union, and Equifax failed to investigate the validity of those accounts. *Id.* ¶¶ 78, 99, 116. Experian also charged Ngapey a monthly subscription fee of $24.99 to access his free credit report. *Id.* ¶ 82.

In November 2022, Ngapey was notified that Cross River had placed his loan in debt collection status with Resurgent and LVNV. *Id.* ¶¶ 130-31. Ngapey emailed and phoned Resurgent and LVNV requesting that they provide evidence that the debts were valid and refrain from reporting those debts to credit reporting agencies. *Id.* ¶ 131. Neither defendant provided that documentation. *Id.* ¶ 132.

### C. Discussion

Ngapey alleges that CMG, Elan, Marlette, and Cross River violated the Equal Credit Opportunity Act (ECOA), *see* Proposed Amended Complaint at 5, 9, 13; Elan, Marlette, and Cross River violated the Truth in Lending Act (TILA), Regulation Z, and the Fair Credit Billing Act (FCBA), *see id*. at 9, 13;[8] Experian, Trans Union, and Equifax violated the Fair Credit Reporting Act (FCRA), *see id*. at 21, 25, 29; and Resurgent and LVNV violated the Fair Debt Collection Practices Act (FDCPA), *see id*. at 33. While Ngapey refines his causes of action and alleges additional facts, I conclude for the reasons that follow that the proposed amended complaint again falls short of stating a claim against the defendants as to which relief can be granted. Accordingly, Ngapey's motion to amend his complaint should be denied.

### 1. ECOA Claims Against CMG, Elan, Marlette, and Cross River

As relevant here, ECOA bars creditors from "discriminat[ing] against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race, color, . . . [or] . . . national origin" or "because all or part of the applicant's income derives from any public assistance program." 15 U.S.C. § 1691(a)(1)-(2). To state a discrimination claim under ECOA, a plaintiff "must sufficiently allege facts to show that the defendant had a discriminatory intent or motive" in taking the adverse action at issue. *Iguade v. First Home Mortg. Corp.*, No. 23-cv-01067-LKG, 2024 WL 1283327, at *3 (D. Md. Mar. 26, 2024) (cleaned up). Absent direct evidence of discrimination, ECOA plaintiffs must show that "(1) they are members of a protected

---

[8] Ngapey also alleges that a contract clause on which Marlette is likely to rely to compel arbitration is invalid. *See* Proposed Amended Complaint at 19. However, that is a defense to the anticipated use of that clause, not a claim.

11

class; (2) they applied for and were qualified for a loan; (3) a bank denied their application; and (4) other similarly situated applicants who were not in the protected class received loans or were treated more favorably." *Id.* at *5.

The proposed amended complaint falls short of that mark. Ngapey neither alleges sufficient facts to constitute direct evidence of discrimination nor makes the showing required to state a claim absent such evidence. Ngapey does allege sufficient facts to show that he is a member of a protected class and that CMG denied him a loan, Elan canceled his credit card limit, and Marlette and Cross River charged him double-digit interest rates and large origination fees. However, he alleges no facts showing that he was qualified for the loans or the loan terms at issue or that other similarly situated applicants not in a protected class were treated more favorably.

The proposed amended complaint hence fails to state a claim of an ECOA violation.

### 2. TILA Claims Against Elan, Marlette, and Cross River[9]

"Congress enacted the TILA in 1968 to assure a meaningful disclosure of credit terms and to protect the consumer against inaccurate and unfair credit . . . practices." *Hamilton v. Fed. Home Loan Mortg. Corp.*, No. 2:13-cv-00414-JAW, 2014 WL 4594733, at *20 (D. Me. Sept. 15, 2014) (cleaned up). Ngapey alleges that Elan violated the TILA by charging him "exorbitant interest" above the "interest rate cap allowed in the State of Maine (6%)" while he was disputing the validity of certain

---

[9] Ngapey mentions Regulation Z, which contains "TILA's implementing regulations . . . set forth in . . . 12 C.F.R. pt. 1026," *In re Ditech Holding Corp.*, No. 19-10412 (JLG), 2024 WL 2232435, at *8 (Bankr. S.D.N.Y. May 16, 2024), only once in passing in his heading for Count III. *See* Proposed Amended Complaint at 9. Accordingly, he articulates no separate claim pursuant to that regulation.

12

charges. Proposed Amended Complaint ¶¶ 29, 31. He asserts that Marlette and Cross River violated the TILA by engaging in an illegal "rent-a-bank" scheme in which a non-bank partners with a state bank to evade a lower interest rate established under state law—in this case, the asserted six percent interest rate cap in Maine. *Id.* ¶¶ 37-57.

Yet, the TILA "is only a disclosure statute and does not substantively regulate consumer credit but rather requires disclosure of certain terms and conditions before consummation of a consumer credit transaction." *Thompson v. NetCredit Loan Servs., LLC*, No. 23-cv-05318-RFL, 2024 WL 2853971, at *3 (N.D. Cal. Apr. 8, 2024) (cleaned up). The TILA thus does not "tell banks how much interest they may charge[.]" *King v. Police & Fire Fed. Credit Union*, No. 16-6414, 2019 WL 2226049, at *14 (E.D. Pa. May 22, 2019) (cleaned up). The proposed amended complaint, accordingly, fails to state a claim of violation of the TILA by Elan, Marlette, or Cross River.

Nor does Ngapey make out a state-law claim of an interest-rate cap violation. He relies on 9-B M.R.S. § 432 for the proposition that Maine caps interest rates at six percent. *See* Proposed Amended Complaint ¶¶ 37, 39, 45. However, that statute provides for a maximum rate of six percent "in the absence of an agreement in writing establishing a different rate[.]" 9-B M.R.S. § 432(1). Ngapey neither describes the relevant agreements nor appends copies to his proposed complaint, *see* Proposed Amended Complaint ¶¶ 20-57; Exhibits (ECF Nos. 36-2 to 36-11), instead alleging in conclusory fashion that he had no valid contracts with Elan, Marlette, or Cross River,

*see id.* ¶¶ 21-23, 31, 37. The proposed amended complaint therefore fails to state a claim that any of those defendants violated Maine's interest-rate caps.

### 3. FCBA Claims Against Elan, Marlette, Cross River

The FCBA imposes certain obligations on a creditor if that creditor, "within sixty days after having transmitted to an obligor a statement of the obligor's account in connection with an extension of consumer credit, receives at the [appropriate] address . . . a written notice . . . from the obligor in which the obligor . . . sets forth or otherwise enables the creditor to identify the name and account number (if any) of the obligor, . . . indicates the obligor's belief that the statement contains a billing error and the amount of such billing error, and . . . sets forth the reasons for the obligor's belief (to the extent applicable) that the statement contains a billing error." 15 U.S.C. § 1666(a).

Once a creditor has received that written notice, the creditor must, "not later than thirty days after the receipt of the notice, send a written acknowledgment thereof to the obligor," and "not later than two complete billing cycles of the creditor (in no event later than ninety days) after the receipt of the notice and prior to taking any action to collect the amount, . . . make appropriate corrections in the account of the obligor" or "send a written explanation or clarification to the obligor, after having conducted an investigation, setting forth to the extent applicable the reasons why the creditor believes the account of the obligor was correctly shown in the statement[.]" *Id.*

Ngapey falls short of stating a claim against Elan, Marlette, or Cross River pursuant to the FCBA. He does not allege that his communications with Elan regarding alleged fraudulent transactions were in writing. *See* Proposed Amended Complaint ¶¶ 24-25. Nor does he allege that Elan failed to investigate or send him the required explanation of its findings in writing. Instead, he takes issue with Elan's disagreement that the charges were fraudulent, its reversal of a prior provisional credit, and its failure to provide additional information at his request. *See id*. ¶¶ 26-29. Those alleged failings do not implicate the FCBA. *See* 15 U.S.C. § 1666(a) ("After complying with the provisions of this subsection with respect to an alleged billing error, a creditor has no further responsibility under this section if the obligor continues to make substantially the same allegation with respect to such error.").

Ngapey alleges that Cross River and Marlette offered him a loan at a five percent interest rate but then charged him an annual thirty-six percent interest rate as well as an origination fee of more than $1,500. *See* Proposed Amended Complaint ¶¶ 52-53. However, he does not allege that he timely notified those entities of a billing error.

The proposed amended complaint therefore fails to state a claim against Elan, Marlette, or Cross River pursuant to the FCBA.

### 4. FCRA Claims Against Experian, Trans Union, and Equifax

The FCRA requires credit reporting agencies to "'follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.'" *Meuse v. Nat'l P.I. Servs., LLC*, No. 21-cv-11533-ADB, 2023 WL 6961883, at *4 (D. Mass. Oct. 20, 2023) (quoting 15 U.S.C. § 1681e(b)). "To make out a claim under § 1681e(b) a plaintiff must allege that: (1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry." *Id.* (cleaned up).

Ngapey alleges that Experian, Trans Union, and Equifax violated this provision when they refused his requests to investigate and cease reporting three accounts that were the subject of lawsuits disputing their validity—a car loan debt of more than $45,000 and two other debts in the sums of $7,961 and $5,421—as well as a $6,000 child support debt that Ngapey asserts was invalid because he had full custody of his child. *See* Proposed Amended Complaint ¶¶ 72-78, 92-99, 110-16. He adds that Experian also wrongfully charged him a monthly subscription fee of $24.99 to access his free credit account in violation of the FCRA. *See id.* ¶ 82.

As to the four challenged debts, Ngapey fails to make the "required showing" of "a *factual* inaccuracy, rather than the existence of disputed legal questions." *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 38 (1st Cir. 2010). Credit reporting agencies are "neither qualified nor obligated to resolve matters that turn[] on questions that can only be resolved by a court of law." *Id.* (cleaned up).   Ngapey's

16

assertion that Experian wrongly charged him for a monthly subscription is not a challenge to the factual accuracy of the reports made by Experian, Trans Union, or Equifax and therefore does not implicate the FCRA.

The proposed amended complaint thus fails to state a claim against Experian, Trans Union, or Equifax predicated on the FCRA.

### 5. FDCPA Claims Against Resurgent and LVNV

Ngapey alleges that Resurgent and LVNV violated a subsection of the FDCPA providing that "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall . . . send the consumer a written notice containing . . . a statement that if the consumer notifies the debt collector in writing within [thirty days after receipt of the notice] that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt . . . and a copy of such verification . . . will be mailed to the consumer by the debt collector[.]"   15 U.S.C. § 1692g(a)(4); *see also* Proposed Amended Complaint ¶¶ 129-33.

Even assuming that Resurgent and LVNV qualify as "debt collectors," Ngapey fails to state a claim against them because he does not allege either that he received the required notice from them or that they failed to send it.  *See* Proposed Amended Complaint ¶¶ 130-33. Instead, he alleges that he was notified in or about November 2022 of "a debt collection status on his credit report appearing on all three credit bureaus referenced herein[,]" *id*. ¶ 130, namely, Experian, Trans Union, and Equifax.

Accordingly, the proposed amended complaint fails to state an FDCPA claim against Resurgent and LVNV.

### IV. Conclusion

For the foregoing reasons, I recommend that the Court **DISMISS** Ngapey's claims against Cross River, Equifax, and Marlette for insufficient service of process and futility, **GRANT** the motions of CMG, Trans Union, Elan, Resurgent, LVNV, and Experian to dismiss Ngapey's complaint, and **DENY** Ngapey's motion to amend his complaint.

### *NOTICE*

*A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the District Court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the District Court and to appeal the District Court's order.*

Dated: July 31, 2024

/s/ Karen Frink Wolf
United States Magistrate Judge